UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| CORRINA DeLEON,<br><br>                    Petitioner,<br><br>    v.<br><br>NANCY A. BERRYHILL,<br>Acting Commissioner of Social Security<br>Administration,[1]<br><br>                    Respondent. | Case No. 1:16-cv-00057-CWD<br><br>**MEMORANDUM DECISION<br>AND ORDER** |

# INTRODUCTION

Currently pending before the Court is Corrina DeLeon's Petition for Review of the

Respondent's denial of social security benefits, filed on February 5, 2016. (Dkt. 1.) The

Court has reviewed the Petition for Review and the Answer, the parties' memoranda, and

the administrative record (AR), and for the reasons that follow, will remand the decision

of the Commissioner for an award of benefits.

---

[1] Nancy A. Berryhill became the Acting Commissioner of Social Security on January 23, 2017. Pursuant to Fed. Rule Civ. P. 25(d), Nancy A. Berryhill should be substituted for Carolyn W. Colvin as the Respondent in this matter. No further action needs to be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

**MEMORANDUM DECISION AND ORDER - 1**

## PROCEDURAL HISTORY

Petitioner filed an application for Disability Insurance Benefits and Supplemental Security Income on October 24, 2012. This application was denied initially and on reconsideration, and a hearing was held on February 12, 2014, before Administrative Law Judge (ALJ) John Molleur. After hearing testimony from Petitioner and a vocational expert, ALJ Molleur issued a decision on March 13, 2014, finding Petitioner not disabled. Petitioner timely requested review by the Appeals Council, which denied her request for review on January 1, 2016.

Petitioner appealed this final decision to the Court. The Court has jurisdiction to review the ALJ's decision pursuant to 42 U.S.C. § 405(g).

At the time of the hearing, Petitioner was thirty-nine years of age. Petitioner has a high school education, and completed a certificate program in medical assisting. Her prior work experience includes work as a medical assistant.

## SEQUENTIAL PROCESS

The Commissioner follows a five-step sequential evaluation for determining whether a claimant is disabled. *See* 20 C.F.R. §§ 404.1520, 416.920. At step one, it must be determined whether the claimant is engaged in substantial gainful activity. The ALJ found Petitioner had not engaged in substantial gainful activity since her alleged onset date of August 16, 2011.

At step two, it must be determined whether the claimant suffers from a severe impairment. The ALJ bifurcated the decision, and set forth two different time periods—

**MEMORANDUM DECISION AND ORDER - 2**

one prior to February 13, 2013, and one after February 13, 2013. The ALJ found that, prior to February 13, 2013, Petitioner's impairments—left shoulder injury with resulting lesion of the axillary nerve, degenerative disc disease of the cervical spine with disk protrusion at C4-5, and insulin dependent diabetes mellitus—severe within the meaning of the Regulations. With regard to the time period after February 13, 2013, the ALJ found Petitioner's impairments—multiple sclerosis, chondromalacia of the patella, and diabetic retinopathy, in addition to the previously mentioned impairments—severe within the meaning of the Regulations.

Step three asks whether a claimant's impairments meet or equal a listed impairment. The ALJ found Petitioner's impairments did not meet or equal the criteria for the listed impairments, specifically considering Listings 1.02 (major dysfunction of a joint); 1.04 (spine disorders) and 1.08 (soft tissue injuries of an upper or lower extremity). The ALJ determined none of Petitioner's impairments met or equaled the criteria for the listed impairments considered.[2]

If a claimant's impairments do not meet or equal a listing, the Commissioner must assess the claimant's residual functional capacity (RFC) and determine, at step four, whether the claimant has demonstrated an inability to perform past relevant work. In assessing Petitioner's residual functional capacity, the ALJ determines whether Petitioner's complaints about the intensity, persistence and limiting effects of her pain are

---

[2] It does not appear the ALJ considered Petitioner's diabetic retinopathy under Listing 2.00 (covering visual disorders), or her multiple sclerosis under Listing 11.09 (multiple sclerosis). Petitioner did not raise this issue in her brief, however.

**MEMORANDUM DECISION AND ORDER - 3**

credible.

Here, the ALJ found Petitioner's complaints not entirely credible. The ALJ found also that the medical source statements of Petitioner's treating medical care providers, Dr. Donaldson, Dr. Harris, and nurse practitioner Deborah Sullivan, were entitled to limited weight.

The burden shifts to the Commissioner to demonstrate, at step five, that the claimant retains the capacity to make an adjustment to other work that exists in significant levels in the national economy, after considering the claimant's residual functional capacity, age, education and work experience.

The ALJ assigned Petitioner a RFC for each time frame. For the period prior to February 13, 2013, the ALJ determined Petitioner retained the RFC to perform less than the full range of light work, with limitations upon pushing or pulling with her left upper extremity, occasional overhead reaching with her left arm, and avoidance of climbing ropes, ladders or scaffolds, no direct exposure to vibrations, and no work around unprotected heights. Based on this RFC finding, the ALJ determined Petitioner could have performed her past relevant work as a file clerk and medical assistant.

For the time period after February 13, 2013, the ALJ determined Petitioner retained the RFC to perform sedentary work, with limitations on pushing or pulling with her left upper extremity, and only occasional overhead reaching with her left arm; limited to only frequent postural activities, avoidance of climbing ropes, ladders or scaffolds, no direct exposure to vibrations, and no work around unprotected heights, and limited to

**MEMORANDUM DECISION AND ORDER - 4**

jobs not requiring more than frequent binocular vision. Based on this RFC finding, the

ALJ determined Petitioner could have made a vocational adjustment to other jobs

existing in significant numbers in the national economy, such as document preparer;

order clerk; and call out operator. (AR 25.)

Consequently, the ALJ determined Petitioner was not disabled.

## STANDARD OF REVIEW

Petitioner bears the burden of showing that disability benefits are proper because

of the inability "to engage in any substantial gainful activity by reason of any medically

determinable physical or mental impairment which . . . has lasted or can be expected to

last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see*

*also* 42 U.S.C. § 1382c(a)(3)(A); *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971).

An individual will be determined to be disabled only if her physical or mental

impairments are of such severity that she not only cannot do her previous work but is

unable, considering her age, education, and work experience, to engage in any other kind

of substantial gainful work which exists in the national economy. 42 U.S.C. §

423(d)(2)(A).

On review, the Court is instructed to uphold the decision of the Commissioner if

the decision is supported by substantial evidence and is not the product of legal error. 42

U.S.C. § 405(g); *Universal Camera Corp. v. Nat'l Labor Relations Bd.*, 340 U.S. 474

(1951); *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999) (as amended); *DeLorme v.*

*Sullivan*, 924 F.2d 841, 846 (9th Cir. 1991). Substantial evidence is such relevant

**MEMORANDUM DECISION AND ORDER - 5**

evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). It is more than a scintilla but less than a preponderance, *Jamerson v Chater*, 112 F.3d 1064, 1066 (9th Cir. 1997), and "does not mean a large or considerable amount of evidence." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988).

The Court cannot disturb the Commissioner's findings if they are supported by substantial evidence, even though other evidence may exist that supports the petitioner's claims. 42 U.S.C. § 405(g); *Flaten v. Sec'y of Health & Human Servs.*, 44 F.3d 1453, 1457 (9th Cir. 1995). Thus, findings of the Commissioner as to any fact, if supported by substantial evidence, will be conclusive. *Flaten*, 44 F.3d at 1457. It is well-settled that, if there is substantial evidence to support the decision of the Commissioner, the decision must be upheld even when the evidence can reasonably support either affirming or reversing the Commissioner's decision, because the Court "may not substitute [its] judgment for that of the Commissioner." *Verduzco v. Apfel*, 188 F.3d 1087, 1089 (9th Cir. 1999).

When reviewing a case under the substantial evidence standard, the Court may question an ALJ's credibility assessment of a witness's testimony; however, an ALJ's credibility assessment is entitled to great weight, and the ALJ may disregard a claimant's self-serving statements. *Rashad v. Sullivan*, 903 F.2d 1229, 1231 (9th Cir. 1990). Where the ALJ makes a careful consideration of subjective complaints but provides adequate reasons for rejecting them, the ALJ's well-settled role as the judge of credibility will be

**MEMORANDUM DECISION AND ORDER - 6**

upheld as based on substantial evidence. *Matthews v. Shalala*, 10 F.3d 678, 679-80 (9th Cir. 1993).

## DISCUSSION

Petitioner suffered a work related injury to her left shoulder on May 24, 2011. She was initially diagnosed with cervical radiculitis and a sprain of her neck and left shoulder. (AR 16.) Later, Dr. Michael O'Brien, on September 20, 2011, noted atrophy of the deltoid muscle and weakness in abducting or lifting her arm outwards. Dr. O'Brian diagnosed a lesion of the axillary nerve that supplied the deltoid muscle in the area, significant enough to cause continuing pain, muscle atrophy, and sensory loss. (AR 16.) Later, on February 17, 2012, Katrina Johnson, PA-C, diagnosed adhesive capsulitis of Petitioner's left shoulder, and she recommended an intra-articular injection along with anti-inflammatory medication, plus physical therapy. (AR 17.) Petitioner continued to complain of ongoing symptoms, including neck pain and bilateral numbness and tingling, as well as pain at her upper extremities. Dr. Michael Curtin on August 21, 2012, confirmed the diagnosis of adhesive capsulitis with profound contracture of the left shoulder and diminished strength of the left side. (AR 17.) A neurological evaluation by Dr. Tyler Frizzell on October 23, 2012, revealed hypoactive reflexes. (AR 17.)

Following her injury, orthopedist Tallerico evaluated Petitioner on March 15, 2012, for purposes of her worker's compensation claim. (AR 267.)[3] Dr. Tallerico noted

---

[3] There appears to be a typographical error on the report. Petitioner's injury date was May 24, 2011, and the date of Dr. Tallerico's exam is noted as March 15, 2011, prior to the injury date. The exam likely occurred on March 15, 2012.

Petitioner's complaints, which included numbness and tingling in her left arm following physical therapy. (AR 268.) According to Dr. Tallerico, Petitioner's left shoulder problem "has developed into a rather bizarre constellation of symptoms including migratory pain symptoms across her upper back, neck, to where the symptoms will be similar down her right arm." (AR 270.) He noted Petitioner described spasm and muscle tightness, as well as fatigue. (AR 270.) Upon examination, Dr. Tallerico noted visible spasm in her right arm and hand; abnormal range of motion in all joints; give way weakness in every single major motor group in the upper and lower extremities; diminished pinprick and light touch in upper and lower extremities in a nonanatomic distribution; a slow shuffling gait; and that she had to terminate the exam due to nausea. Dr. Tallerico reached the opinion that Petitioner was "willfully misrepresenting her physical condition as it relates to the industrial injury of May 24, 2011." (AR 275.)

Petitioner sought treatment also from Dr. Shoemaker, her treating physician, throughout 2011. On September 1, 2011, Dr. Shoemaker concluded that, despite Petitioner's complaints of continued pain, he did not have "a reasonable pain generator" to explain her continued persistent diffuse pain symptoms. (AR 288, 19.) In his opinion, Petitioner's pain complaints were related to degenerative pre-existing changes in her cervical spine, and he had no other opinion regarding Petitioner's left shoulder with numbness, tingling in both hands, and distribution of pain throughout her left upper extremity. (AR 299.)

Upon referral from Dr. Timothy Doerr, Petitioner on March 12, 2013, underwent

**MEMORANDUM DECISION AND ORDER - 8**

an MRI. (AR 479-480.) The MRI results indicated subtle intramedullary signal disturbance at the mid C2 level and the C3-4 level suggesting a demyelinating process. Based upon the MRI results, Dr. Wade Harris, on April 17, 2013, diagnosed Petitioner with multiple sclerosis. (AR 496.) At the examination, Dr. Harris noted Petitioner was "positive for visual change, memory loss, weakness, gait instability and sensory change." (AR 496.) Dr. Harris observed an abnormal gait, which included abnormal arm swing, stride, and turn, and that Petitioner could not perform tandem walk without balance support. (AR 497.) Because of Petitioner's reported symptoms, which included vision changes, voice changes and memory loss consistent with multiple sclerosis, Dr. Harris ordered an MRI of the brain and a lumbar puncture to further evaluate the etiology of Petitioner's demyelinating changes. (AR 497.)

The MRI of Petitioner's brain, which occurred on April 25, 2013, revealed multifocal areas of nodular white matter signal abnormality, as well as other findings, consistent with a demyelinating process such as multiple sclerosis. (AR 592.) Petitioner underwent a lumbar puncture on May 10, 2013, which reflected a high level of oligoclonal bands, seen in patients with multiple sclerosis. (AR 489, 594.)

Dr. Harris, together with nurse practitioner Deborah Sullivan, provided a medical source statement on July 22, 2013. (AR 481 – 488.) In their opinion, based upon their examinations, clinical observations, training, and expertise, Petitioner could only sit, stand and/or walk for less than 2 hours in an 8-hour workday, could only occasionally lift and/or carry less than 10 pounds, and she had varying degrees of limitations in her upper

**MEMORANDUM DECISION AND ORDER - 9**

and lower extremities due to weakness and pain. They noted Petitioner had problems with balance, decreased strength, and decreased sensation.

Petitioner contends the ALJ erred at step four[4] by failing to consider all of Petitioner's impairments, and assigning two different periods and two RFCs. Petitioner contends also the ALJ erred in evaluating Petitioner's credibility, and in rejecting the opinions of treating providers Dr. Harris, nurse practitioner Sullivan, and chiropractor Donaldson. Consequently, Petitioner asserts the RFC determination did not adequately account for the cumulative effects of Petitioner's mental and physical limitations, and was erroneous. The Court will address each of Petitioner's arguments below.

## 1.      The ALJ's Bifurcation of the Record Is Error

Multiple sclerosis (MS) is a chronic, inflammatory, degenerative disorder that damages the myelin sheath surrounding the nerve fibers in the brain and spinal cord. Listing 11.00N(1). The damage disrupts the normal transmission of nerve impulses within the brain and between the brain and other parts of the body, causing impairment in muscle coordination, strength, balance, sensation, and vision. There are several forms of MS, ranging from mild to highly aggressive. Milder forms generally involve acute attacks (exacerbations) with partial or complete recovery from signs and symptoms (remissions). Aggressive forms generally exhibit a steady progression of signs and symptoms with few

---

[4] There is some ambiguity in Petitioner's brief whether she raised an argument the ALJ erred at step three. (Dkt. 12 at 20.) Because it was not addressed with specificity, the Court finds any argument that Petitioner met a listing was waived. *Carmickle v. Comm'r*, 533 F.3d 1155, 162 n.2 (9th Cir. 2008).

**MEMORANDUM DECISION AND ORDER - 10**

or no remissions. The effects of all forms vary from person to person. Listing 11.00N(1)

The ALJ is instructed to evaluate a claimant's signs and symptoms, such as flaccidity, spasticity, spasms, incoordination, imbalance, tremor, physical fatigue, muscle weakness, dizziness, tingling, and numbness when he determines a claimant's ability to stand up, balance, walk, or perform fine and gross motor movements. Listing 11.00N(2). When determining whether a claimant has limitations of physical and mental functioning, the ALJ is to consider a claimant's other impairments or signs and symptoms that develop secondary to the disorder, such as fatigue; visual loss; trouble sleeping; impaired attention, concentration, memory, or judgment; mood swings; and depression. If a claimant has a vision impairment resulting from MS, the ALJ is instructed that he or she may evaluate that impairment under the special senses body system, 2.00. Listing 11.00N(2).

As an initial matter, and as Petitioner properly argues, the ALJ's reasoning suggests a lack of familiarity with or appreciation of multiple sclerosis. Multiple sclerosis is a progressively disabling condition characterized by periods of remission and exacerbation. *Smith v. Astrue*, 2011 WL 3300086, at *5 (C.D. Cal. July 29, 2011) (citing *Estes v. R.R. Ret. Bd.*, 776 F.2d 1436, 1437 (9th Cir. 1985). The Court of Appeals for the Ninth Circuit has recognized that "multiple sclerosis can be disabling notwithstanding normal activity in periods of remission." *Id*. As the Ninth Circuit observed:

> [m]ultiple sclerosis is an incurable progressive disease subject to such periods of remission and exacerbation.... Because [the period when petitioner worked and attended school] was unquestionably a period of

**MEMORANDUM DECISION AND ORDER - 11**

> remission, we believe the ALJ erred in placing undue reliance on this brief and temporary interruption of plaintiff's progressively disabling condition. Rather, he should have considered that time-span as merely a period of remission in a continuing disability....

*Estes,* 776 F.2d at 1437 (quoting *Parish v. Califano*, 642 F.2d 188, 193 (6th Cir. 1981)).

Despite authority to the contrary, the ALJ concluded Petitioner's MS suddenly appeared, as he selected the arbitrary date of February 13, 2013, just prior to Petitioner's MS diagnosis, to bifurcate his RFC analysis. By doing so, the ALJ erroneously ignored Petitioner's observed symptoms of MS that existed prior to her diagnosis (tremors, pain, fatigue, memory problems, and balance problems), and failed to consider the post-diagnosis evidence to infer Petitioner was suffering from symptoms of MS prior to Dr. Harris's diagnosis of the same on April 17, 2013.

Analogous facts in *Koller v. Colvin*, 2014 WL 868830 *3 (W.D. Wa. Mar. 5, 2014) support the Court's conclusion the ALJ erred by not considering whether Petitioner exhibited symptoms of MS prior to her diagnosis. In *Koller*, the court found the ALJ erred because he ignored medical evidence after the date last insured, even though it was relevant to establishing the existence of a condition existing prior to the date last insured. *Id.* Provided the evidence suggests the condition did, in fact, exist prior to the date last insured, the ALJ must consider it and cannot ignore it. *Id.*

Similarly, this Court in *Wiggins v. Astrue*, No. CV 07–491–S–CWD, 2009 WL 205230 (D. Idaho Jan. 28, 2009), encountered a petitioner with a malignant brain tumor which was not diagnosed until it measured 3.1 x 2.2 centimeters. The ALJ failed to

**MEMORANDUM DECISION AND ORDER - 12**

consider Petitioner's complaints of symptoms consistent with a growing tumor prior to its diagnosis, and found the condition not severe. The Court held the ALJ erred by failing to consider the record as a whole, because symptoms of the petitioner's malignant brain tumor were evident prior to her diagnosis.

Petitioner's medical records, when considered as a whole, reflect she experienced symptoms associated with multiple sclerosis well before Dr. Harris diagnosed their cause. Multiple medical records indicate health care practitioners observed Petitioner's symptoms, and that she had complaints clearly not related to her shoulder injury, but no one took the opportunity to investigate further. Instead, Petitioner was believed to be faking by Dr. Tallerico. Petitioner's long-time chiropractor, Dr. Donaldson, disagreed, but he was mystified by the symptoms and unable to adequately assess them because they were beyond his area of expertise.

By bifurcating the record, and accepting Dr. Tallerico's and Dr. Shoemaker's conclusions that Petitioner was faking the pain and other symptoms unrelated to her shoulder injury prior to February 13, 2013, (AR 19-20), the ALJ failed to consider the record as a whole. Instead, he restricted his analysis to the medical evidence during each period, and failed to evaluate whether Petitioner's symptoms prior to her formal MS diagnosis on April 17, 2013, were consistent with symptoms indicative of MS prior to that date. None of the physicians who examined Petitioner for her occupational injury had the benefit of later knowledge of Petitioner's MS diagnosis. The ALJ did have this information, but erred by failing to consider it and the medical record as a whole.

**MEMORANDUM DECISION AND ORDER - 13**

Respondent cited no authority supporting the ALJ's approach, and the Court could find none. For the above reason alone, the Court could justify remanding the matter, but because this error was so egregious, it caused additional errors in the ALJ's decision that warrants discussion as provided below.

## 2.   Petitioner's Credibility

Petitioner contends the ALJ erroneously found her not credible. The Court agrees.

The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities. *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998). The ALJ's findings must be supported by specific, cogent reasons. *Reddick*, 157 F.3d at 722. If a claimant produces objective medical evidence of an underlying impairment, an ALJ may not reject a claimant's subjective complaints of pain based solely on lack of medical evidence. *Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005). *See also Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997) (holding that an ALJ may not discredit a claimant's subjective testimony on the basis that there is no objective medical evidence that supports the testimony).

When assessing the credibility of a claimant's testimony regarding subjective pain or the intensity of symptoms, the ALJ engages in a two-step analysis. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). First, the ALJ must determine whether there is "objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Id*. If the claimant has presented such evidence, and there is no evidence of malingering, the ALJ must give

**MEMORANDUM DECISION AND ORDER - 14**

"specific, clear and convincing reasons" to reject the claimant's testimony about the severity of the symptoms. *Id*. At the same time, the ALJ is not "required to believe every allegation of disabling pain, or else disability benefits would be available for the asking, a result plainly contrary to 42 U.S.C. § 423(d)(5)(A)." *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989).

When evaluating the claimant's testimony, the ALJ may use "ordinary techniques of credibility evaluation." *Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1224 n.3 (9th Cir. 2010). For instance, the ALJ may consider inconsistencies either in the claimant's testimony or between the testimony and the claimant's conduct, *id*.; "unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment," *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008); and "whether the claimant engages in daily activities inconsistent with the alleged symptoms," *Lingenfelter v. Astrue*, 504 F.3d 1028, 1040 (9th Cir. 2007). While a claimant need not "vegetate in a dark room" to be eligible for benefits, *Cooper v. Bowen*, 815 F.2d 557, 561 (9th Cir. 1987), the ALJ may discredit a claimant's testimony when the claimant reports participation in everyday activities indicating capacities that are transferable to a work setting, *see Morgan v. Comm'r Soc. Sec. Admin*., 169 F.3d 595, 600 (9th Cir. 1999). Even where those activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent they contradict claims of a totally debilitating impairment. *See Turner*, 613 F.3d at 1225.

The reasons an ALJ gives for rejecting a claimant's testimony must be supported

by substantial evidence in the record. *Regennitter v. Comm'r of Soc. Sec. Admin.*, 166 F.3d 1294, 1296 (9th Cir. 1999). If there is substantial evidence in the record to support the ALJ's credibility finding, the Court will not engage in second-guessing. *Thomas v. Barnhart*, 278 F.3d 957, 959 (9th Cir. 2002). When the evidence can support either outcome, the court may not substitute its judgment for that of the ALJ. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).

The ALJ found Petitioner's impairments could reasonably be expected to cause some of her alleged symptoms, but that her statements about the intensity, persistence, and limiting effects of her symptoms were not entirely credible. The first reason the ALJ gave for rejecting Petitioner's credibility was that her complaints regarding her problems walking were not consistent with the medical evidence in the record. In so concluding, the ALJ ignored multiple instances where care providers specifically noted Petitioner's shuffling gait, balance problems, and gait instability. (AR 562; 570, 589, 531, 533, 272, 498.) Petitioner's shuffling gait and balance problems are symptoms of MS. Listing 11.00N(2). The substantial, objective medical evidence of record does not support a finding of malingering, or support the ALJ's credibility finding.

Next, the ALJ relied upon Dr. Tallerico's and Dr. Donaldson's opinions, both of whom believed Petitioner was amplifying her symptoms for secondary gain. However, as explained above, neither physician had the benefit of knowing Petitioner's later MS diagnosis. It was therefore error for the ALJ to discredit Petitioner's complaints of pain and the other symptoms she reported to Drs. Shoemaker and Tallerico, given the very

**MEMORANDUM DECISION AND ORDER - 16**

same complaints she reported were consistent with symptoms attributable to her later MS diagnosis.

Third, the ALJ rejected Petitioner's credibility on the grounds that she exercised twice a week at a local recreation center. (AR 23.) However, the ALJ's conclusion misconstrues Petitioner's testimony. Petitioner testified she was able to slowly pedal a stationary bike and walk on a treadmill with assistance, not run marathons or participate in a spinning class. (AR 57.) Petitioner should not be penalized for an attempt to maintain some semblance of physical activity, consistent with her testimony about her limitations. The ALJ's conclusion in this regard is in error.

Fourth, the ALJ discredited Petitioner's testimony because she had not followed up with her neurologist, Dr. Harris, since July of 2013. (AR 23.) Again, however, the ALJ misconstrues the evidence in the record. Petitioner explained that, during this time, she was being followed by Terry Reilly Health Services for her regular care, and that she was in frequent phone contact with the pharmaceutical company and Dr. Harris for medication management. (AR 51, 556 – 561.) Petitioner sought care also from Dr. Donaldson during 2013 and 2014. (AR 562 – 574.) A mere failure to visit the neurologist, when her medications and care were being managed by other providers, is not a clear and convincing reason to reject Petitioner's testimony regarding the severity of her symptoms.

Fifth, the ALJ concluded the evidence in the record established Petitioner had reason to complain because of secondary gain, citing the fact she alleged onset of

**MEMORANDUM DECISION AND ORDER - 17**

disability on the same date she was fired from her job. (AR 19, 287.) Petitioner continued

to work light duty after the injury, but was later terminated from her employment on

August 16, 2011. (AR 293, 287.) At that time, Petitioner complained of muscle spasms

and pain, which complaints her physician dismissed. (AR 287, 288.) Petitioner reported

the reason she was fired was because her injury was affecting her work performance, and

her employer felt she was not meeting expectations. (AR 187.) It is worth noting also that

Petitioner completed her disability report on November 15, 2012, (AR 183), prior to her

MS diagnosis; thus, even she did not know the cause of her pain and other symptoms.

Sixth, the ALJ concluded Petitioner's worker's compensation claim and a non-

specified claim against her employer were reasons to discredit her testimony. (AR 19.)

However, the fact Petitioner may have had an open worker's compensation claim, or an

unspecified lawsuit against her employer, is a legally insufficient reason to discredit a

claimant's testimony, and is not one of the listed factors an ALJ is to consider. *See* 20

C.F.R. § 404.1529(c)(3).

Seventh, the ALJ discredited Petitioner because she continued to work with

restriction following her shoulder injury and prior to the termination of her employment

on August 16, 2011. (AR 19.) However, "it does not follow from the fact that a claimant

tried to work for a short period of time and, because of his impairments, failed, that he

did not then experience pain and limitations severe enough to preclude him from

maintaining substantial gainful employment. Indeed, we have suggested that similar

evidence that a claimant tried to work and failed actually supported his allegations of

**MEMORANDUM DECISION AND ORDER - 18**

disabling pain." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1038 (9th Cir. 2007). Further, Petitioner's work attempt did not take place during the relevant time period – it was prior to the onset date of August 16, 2011.

Eighth, the ALJ cites Petitioner's collection of unemployment benefits beginning the second quarter of 2011 and continuing through the first quarter of 2013, as well as the lack of any attempt to return to work since August of 2011, despite her young age, as evidence of lack of credibility. (AR 19.) Upon review of the record, the Court finds this is not a convincing reason supported by substantial record evidence for discrediting Petitioner's testimony concerning her alleged level of impairment. Although collection of unemployment benefits may undermine a petitioner's allegations of her inability to work, here Petitioner's testimony and evidence in the record contradict that finding. Specifically, Petitioner represented she was not capable of working, and the record indicated Petitioner's husband, at the time of the hearing, had been laid off from his employment. (AR 46.)  The record indicates also that Petitioner had applied for disability benefits on October 24, 2012, at the same time she was collecting unemployment, which supports Petitioner's testimony that, although she was receiving unemployment benefits, she was unable to work at that time. These facts, as well as the medical evidence of record considered as a whole, contradict the ALJ's determination that Petitioner's receipt of unemployment benefits proves she "had the capacity to work" after August of 2011.

And finally, the ALJ relies upon Petitioner's request, while at work, for "pain medication" as a reason to discredit her. (AR 19.) While there is a note in the record

**MEMORANDUM DECISION AND ORDER - 19**

dated August 17, 2011, regarding Petitioner's request on two unspecified occasions, (AR 295), no physician followed up on the alleged request, and the ALJ failed to question Petitioner to clarify the allegation. The ALJ offers no explanation why a request for unspecified pain medication, which request occurred prior to her onset date, and without any evidence in the record as to what type of pain medication she requested, discredits Petitioner's complaints of pain. The Court fails to see the connection between requesting pain medication for pain symptoms, and a lack of credibility regarding those symptoms. Rather, a request for pain medication from one's employer, knowing termination of employment could follow, leads to the opposite conclusion.

A review of the record as a whole, and in light of Petitioner's eventual MS diagnosis, the Court finds the reasons the ALJ proffered for discrediting Petitioner's pain testimony are not specific, clear, or convincing, nor are they based upon substantial evidence in the record. The ALJ's adverse credibility determination was in error, and invalid.

### 3.    Provider Opinions

Petitioner contends the ALJ erroneously rejected the opinions of Petitioner's treating providers, Dr. Donaldson, Dr. Harris, and nurse practitioner Deborah Sullivan, because the ALJ did not properly weigh their opinions, and erroneously concluded the opinions were not supported by or consistent with other medical evidence. The Court agrees.

**MEMORANDUM DECISION AND ORDER - 20**

The Ninth Circuit Court of Appeals distinguishes among the opinions of three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining physicians). *Lester v. Chatter*, 81 F.3d 821, 830 (9th Cir. 1995). As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant. *Winans v. Bowen*, 853 F.2d 643, 647 (9th Cir. 1987).

Where the treating doctor's opinion is not contradicted by another doctor, it may be rejected only for "clear and convincing" reasons. *Baxter v. Sullivan*, 923 F.2d 1391, 1396 (9th Cir. 1991). Also, "clear and convincing" reasons are required to reject the treating doctor's ultimate conclusions. *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988). Even if the treating doctor's opinion is contradicted by another doctor, the Commissioner may not reject this opinion without providing "specific and legitimate reasons" supported by substantial evidence in the record for so doing. *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983).

An ALJ is not required to accept an opinion of a treating physician if it is conclusory and not supported by clinical findings. *Matney ex rel. Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992). Additionally, an ALJ is not bound to a physician's opinion of a claimant's physical condition or the ultimate issue of disability. *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989). If the record as a whole does not support the physician's opinion, the ALJ may reject that opinion. *Batson v. Comm'r of Soc. Sec.*

**MEMORANDUM DECISION AND ORDER - 21**

*Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004). Items in the record that may not support the physician's opinion include clinical findings from examinations, conflicting medical opinions, conflicting physician's treatment notes, and the claimant's daily activities. *Id.*; *Bayliss v. Barnhart*, 427 F.3d 1211 (9th Cir. 2005); *Connett v. Barnhart*, 340 F.3d 871 (9th Cir. 2003); *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595 (9th Cir. 1999). An ALJ also may reject a treating physician's opinion if it is based "to a large extent" on a claimant's self-reports that have been property discounted as not credible. *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008).

A nurse practitioner and a chiropractor qualify as an "other source." 20 C.F.R. § 404.1513(d)(1). Other sources are qualified to provide evidence about "the severity of [a claimant's] impairment(s) and how it affects [the claimant's] ability to work." *Garrison v. Colvin*, 759 F.3d 995, 1013–14 (9th Cir. 2014). The ALJ may discount testimony from these "other sources" if the ALJ "'gives reasons germane to each witness for doing so.'" *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) (quoting *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir.2001)).

### A.  *Dr. Donaldson*

Dr. Donaldson was Petitioner's treating chiropractor from October 4, 2011, to January 20, 2014. (AR 381 – 389, 413 – 459; 562 – 585; 586 - 591.) The ALJ limited his discussion of Dr. Donaldson's opinions and treatment records, however, to the period prior to February 13, 2013. (AR 20.) Dr. Donaldson's letter of May 7, 2012, written in support of Petitioner's worker's compensation claim, noted Petitioner's complaints of

neck pain, upper thoracic pain, muscle spasms in her chest, bilateral arms, and neck, numbness in her arms, and inability to use her arms due to weakness. (AR 382.) Dr. Donaldson noted he observed muscle spasm, tenderness bilaterally, and limited range of motion, as well as diminished pain reception in her left arm and torso. (AR 382.) Dr. Donaldson recommended treatment outside his field of expertise, and he disagreed with Dr. Tallerico's I.M.E. (AR 383.)

The ALJ rejected Dr. Donaldson's opinion in favor of Dr. Tallerico's assessment that Petitioner was misrepresenting her physical condition as it related to her shoulder injury sustained on May 24, 2011. The ALJ further rejected Dr. Donaldson's opinion because Petitioner was complaining about her right arm, despite injuring her left shoulder, and there was no objective evidence of problems with Petitioner's right arm.

The ALJ's conclusion with regard to Dr. Donaldson's opinion is based upon his flawed analysis, as discussed above. Petitioner did not suddenly acquire MS on or after February 13, 2013. Prior to that date, she was complaining of migratory pain symptoms, was observed walking with a shuffling gait, and she complained of numbness, tingling, and decreased sensation in both of her upper extremities. Dr. Donaldson observed muscle spasm, and decreased pain sensation. Hypoactive reflexes were noted upon examination by Dr. Frizzell, and manual motor testing by Dr. Tallerico showed give way weakness in the upper and lower extremities, as well as diminished pinprick and light touch sensation.

With the exception of Dr. Donaldson, who provided care to Petitioner up through her diagnosis with MS, all of the physicians examining Petitioner prior to February 13,

**MEMORANDUM DECISION AND ORDER - 23**

2013, were focused on Petitioner's left shoulder injury, and were not treating her for anything else. Nor did any of the physicians have the benefit of Petitioner's MS diagnosis. Yet, Petitioner's complaints were consistent with symptoms of MS. *See* Listing 11.00N(2). Accordingly, the ALJ's rejection of Dr. Donaldson's opinion is not supported by substantial evidence based upon the record as a whole.

### B.  *Dr. Harris and Deborah Sullivan, FNP*

The ALJ next dismissed Dr. Harris's and nurse practitioner Deborah Sullivan's opinion, giving the combined opinion little weight, because their opinions "appear to be based primarily on the claimant's subjective complaints." (AR 23.) Dr. Harris diagnosed Petitioner with MS. He and Sullivan together provided a physical RFC assessment. (AR 481 – 488.)

The ALJ is required to consider certain factors when deciding how much weight to give the treating physician's opinion, including: (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship; (3) whether the physician's opinion was supported by relevant medical evidence; (4) the opinion's consistency with the record as a whole; and (5) whether the treating physician was a specialist in the relevant area. 20 C.F.R. § 404.1527(c)(2)-(5). When the ALJ assigns less than controlling weight to the physician's opinion after considering these factors, a reviewing court "must allow that decision to stand so long as the ALJ minimally articulated his reasons—a very deferential standard that we have, in fact, deemed lax." *See Elder v. Astrue*, 529 F.3d 408, 415 (7th Cir.2008) (quotation

**MEMORANDUM DECISION AND ORDER - 24**

marks omitted).

Here, the ALJ considered none of the required factors. Yet, objective medical evidence such as the two MRIs and the lumbar puncture supported Dr. Harris's diagnosis of MS. Dr. Harris documented symptoms consistent with MS, such as weakness, gait instability, and decreased sensation. (AR 487 – 489.) Further, because the ALJ's analysis of Petitioner's credibility was in error, the ALJ's adverse credibility finding was not a specific or legitimate reason to reject the opinions of Dr. Harris and nurse practitioner Sullivan.

### C.   *Other Provider Opinions*

Dr. Mark Williams examined Petitioner on October 22, 2013, in connection with her worker's compensation claim. (AR 514.) His observations support Dr. Harris's opinions. Dr. Williams concluded Petitioner's weakness in her hands and radiating pain in her upper and lower extremities were related to her MS, but that she also had separate, orthopedic related impairments associated with the left shoulder injury. (AR 513.) In his opinion, Petitioner's MS compounded her shoulder injury, and impeded her ability to heal given the neurologic side effects from the disease. (AR 513.)

However, the ALJ rejected Dr. Williams' opinion, finding it unsupported by the evidence of record. (AR 24.) The ALJ cited Dr. Frizzell's examination records from October 23, 2012, which, at that time, noted normal strength and gait, but hypoactive reflexes. (AR 24.) Reliance on one other examination record is not a specific or legitimate reason supported by substantial evidence in the record to reject an examining

physician's opinion. Dr. Williams' opinion is consistent with Dr. Harris's opinion. Further, other evidence in the record indicates Petitioner's care was becoming too complex for the Friendship Clinic, which on June 18, 2013, referred Petitioner to the Terry Reilly Health Clinic. (AR 531.) It is almost as if the ALJ ignored Petitioner's MS symptoms during this time frame, and failed to consider the fact that MS symptoms wax and wane as part of the disease process. The ALJ's rejection of Dr. Williams' opinion was, therefore ,in error.

**4.     Residual Functional Capacity**

Last, Petitioner argues the ALJ's RFC finding is not supported by substantial evidence in the record. Specifically, Petitioner argues the RFC analysis is in error because the ALJ improperly rejected the opinion of treating providers Dr. Harris and nurse practitioner Sullivan.

A claimant's RFC represents a finding of the range of tasks she is capable of performing notwithstanding the impairments at issue. 20 C.F.R. § 404.1545(a). An RFC determination is informed by consideration of a claimant's physical abilities, mental abilities, symptomology, including pain, and other limitations which could interfere with work activities on a regular and continuing basis. *Id*. To properly ascertain a claimant's RFC, an ALJ must therefore assess Petitioner's exertional capabilities, addressing his or her ability to sit, stand, walk, lift, carry, push and pull. 20 C.F.R. §§ 404.1545(b), 404.1569a. Nonexertional limitations or impairments, including impairments which result in postural and manipulative limitations, must also be considered. 20 C.F.R. §§

**MEMORANDUM DECISION AND ORDER - 26**

404.1545(b), 404.1569a; *see also* 20 C.F.R. Part 404, Subpt. P, App. 2 § 200.00(e). These include mental limitations such as the effects of depression, fatigue, pain, tenderness, numbness and muscle spasms.

The ALJ relied upon the testimony of a vocational expert at the hearing. (AR 63 – 67.) He asked the vocational expert a series of hypotheticals, and based upon some of them, the vocational expert opined that an individual with Petitioner's qualifications and limitations would be able to perform the requirements of certain occupations. However, the ALJ asked also whether an individual who could not sit for more than 2 hours out of an 8-hour workday, and could not stand for more than 2 hours out of an 8-hour workday, would be able to sustain the identified jobs. (AR 66.) The vocational expert indicated these limitations would rule out all competitive work. (AR 66.)

Here, the ALJ improperly rejected the opinions of Dr. Harris, nurse practitioner Sullivan, Dr. Williams, and Dr. Donaldson, and instead relied upon the opinions of Dr. Tallerico and Dr. Shoemaker, who did not have the benefit of Petitioner's MS diagnosis, yet observed several signs and symptoms indicative of the disease. But, because Dr. Tallerico and Dr. Shoemaker were focused on the wrong ailment---Petitioner's left shoulder injury---they failed to appreciate the significance of Petitioner's complaints, and instead dismissed them summarily. Accordingly, the ALJ relied upon an incorrect RFC determination, and the testimony relied upon was not probative of Petitioner's disability.

5.      **Remand**

Having found reversible error in the ALJ's decision, most pertinent that the ALJ improperly discredited treating physicians' opinions, the examining physician's opinion, other medical source opinions, and Petitioner's testimony, the Court now addresses the question of whether to remand for further administrative proceedings or an award of benefits.

The decision whether to remand for further proceedings or order an immediate award of benefits is within the Court's discretion. *Harman v. Apfel*, 211 F.3d 1172, 1175–78 (9th Cir. 2000). Where no useful purpose would be served by further administrative proceedings, or where the record has been fully developed, it is appropriate to exercise this discretion to direct an immediate award of benefits. *Id.* at 1179 ("the decision of whether the remand for further proceedings turns upon the likely utility of such proceedings"). However, where there are outstanding issues that must be resolved before a determination of disability can be made, and it is not clear from the record that the ALJ would be required to find the claimant disabled if all the evidence were properly evaluated, remand is appropriate. *Id*. at 1179–81.

The Court may remand for an award of benefits only if three conditions are met: (1) the ALJ failed to provide legally sufficient reasons for rejecting the evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the

**MEMORANDUM DECISION AND ORDER - 28**

claimant disabled were such evidence credited. *Benecke v. Barnhart*, 379 F.3d 587, 593 (9th Cir. 2004).

With regard to the first factor, for the reasons discussed herein, the ALJ failed to provide legally sufficient reasons for rejecting the treating and examining physician opinions, as well as the opinions of nurse practitioner Sullivan and chiropractor Donaldson. Accordingly, the Court credits the physicians' opinions as a matter of law. *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995). Similarly, the ALJ's determination regarding Petitioner's credibility was legally incorrect. Accordingly, the Court credits that evidence as true. *Benecke*, 379 F.3d at 594.

Turning to the other factors, there are no outstanding issues to be resolved before a determination of disability can be made. There are numerous medical reports in the record documenting Petitioner's MS symptoms, both before and after her official diagnosis. The ALJ, without any support in the record, bifurcated the record into two distinct time periods, contrary to the regulations that require consideration of the record as a whole. At the hearing, both Petitioner and the vocational expert testified, and the ALJ deemed the record sufficiently complete to enable him to render a decision. The record is therefore complete.

If the improperly discredited evidence was credited as true, it is clear the ALJ would be required to find Petitioner disabled on remand. The Court's conclusion follows directly from its analysis of the ALJ's errors and the strength of the improperly discredited evidence, which the Court credits as true: a treating physician, a treating nurse

**MEMORANDUM DECISION AND ORDER - 29**

practitioner, a treating chiropractor, and, an examining physician's opinion consistent with the same; as well as Petitioner's testimony about her disabling impairments. Further, the vocational expert explicitly testified that, based upon the limitations contained in Dr. Harris' RFC determination, Petitioner could not work. (AR 66.)

Respondent's arguments to the contrary are unavailing. Respondent cites the findings from Dr. Tellerico and Dr. Shoemaker, neither of whom had the benefit of Petitioner's MS diagnosis to explain what they thought were bizarre complaints, as conflicting evidence which supports the ALJ's conclusion. However, based upon the record and the discussion above, this is not the type of conflicting opinion the Court should credit in support of remand. Respondent noted also that certain examining practitioners did not find abnormal symptoms. (Dkt. 15-7.) However, even if some of Petitioner's symptoms occasionally abated, Petitioner continued to seek an explanation for her complaints and continued her treatment; and, periods of remission are medically indicative of MS. The Court therefore has no reason to doubt Petitioner has been incapable of work since August 16, 2011. A remand for calculation and award of benefits is therefore required. *See Garrison v. Colvin*, 759 F.3d 995, 1022 (9th Cir. 2014) (applying credit as true rule).

## CONCLUSION

Based upon the foregoing, the Court will grant Petitioner's request for review, and remand for an award of benefits.

**MEMORANDUM DECISION AND ORDER - 30**

## <u>ORDER</u>

**NOW THEREFORE IT IS HEREBY ORDERED:**

1)      Plaintiff's Petition for Review (Dkt. 1) is **GRANTED**.

2)      This action shall be **REMANDED** to the Commissioner for a

calculation and award of benefits.

3)      This Remand shall be considered a "sentence four remand,"

consistent with 42 U.S.C. § 405(g) and *Akopyan v. Barnhart*, 296 F.3d 852,

854 (9th Cir. 2002).

Dated: **March 31, 2017**

Honorable Candy W. Dale
United States Magistrate Judge

**MEMORANDUM DECISION AND ORDER - 31**